UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HANNAH MITTER, | ) | |
| | ) | |
| Plaintiff, | ) | 13 C 841 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| COUNTY OF DUPAGE, DR. BLAIN CUSACK, DUPAGE COUNTY SHERIFF'S OFFICE, and JOHN ZARUBA, in his official capacity as DuPage County Sheriff, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

### M<span/>EMORANDUM O<span/>PINION AND O<span/>RDER

In this lawsuit, Hannah Mitter alleges wrongful termination under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*, the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, against the County of DuPage, the DuPage County Sheriff's Office, and John Zaruba in his official capacity as DuPage County Sheriff; she also alleges assault and intentional infliction of emotional distress under Illinois law against those three defendants and a fourth, Dr. Blain Cusack. Doc. 17. The official capacity claims against Zaruba will not be separately discussed because they are no different than the claims against the Sheriff's Office. *See Franklin v. Zaruba*, 150 F.3d 682, 686 (7th Cir. 1998) ("suits against sheriffs in their official capacities are in reality suits against the county sheriff's department"). Defendants have moved to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(6). Doc. 19. The motion is granted in part and denied in part.

1

**Background**

In considering the motion to dismiss, the court assumes the truth of the amended complaint's factual allegations, though not its legal conclusions. *See Munson v. Gaetz*, 673 F.3d 630, 632 (7th Cir. 2012). The court must consider "documents attached to the [amended] complaint, documents that are critical to the [amended] complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Mitter's brief opposing dismissal, so long as those facts "are consistent with the pleadings." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). The following sets forth the facts as favorably to Mitter as these materials allow. *See Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012).

Mitter is a Korean woman who was born on December 22, 1950. Doc. 17 at ¶ 8. She began working for the Sheriff's Office in February 2001 as a Registered Nurse at the DuPage County Jail. *Id*. at ¶ 9. (For the reasons given below, although the amended complaint refers to Mitter's employer as "DuPage," which she defines to include the County and the Sheriff's Office, her only employer is the Sheriff's Office.) During the course of her employment, Mitter maintained positive performance reviews and received awards for both employee of the year and employee of the month. *Id*. at ¶ 11.

In June 2008, Mitter began to suffer from extreme sensitivity and allergies to perfumes, colognes, chemicals, and other scented substances and objects. *Id*. at ¶¶ 13, 16. Exposure to such scents caused Mitter extreme dizziness, breathing difficulties, headaches, increased blood pressure, heart palpitations, floaters and light in vision of sight, facial swelling, and burning, itchy, and watery eyes. *Id*. at ¶ 14. These symptoms greatly affected Mitter's ability to perform her job duties. *Ibid*. More than once, Mitter had to leave work due to an allergy flare-up. *Ibid*.

In or around July 2008, certain Jail employees began to hang and spray air fresheners throughout the Jail, including in bathrooms, the medical treatment room, and the employee break room. *Id*. at ¶ 15. Mitter reported her allergies, symptoms, and co-workers' conduct to the Director of Nursing, and she told the Sheriff's Office that she was having trouble performing her job duties as a result of her disability and asked to be accommodated. *Id*. at ¶¶ 17-18. The Sheriff's Office did not require the air fresheners to be taken down and did not accommodate Mitter's sensitivity to her co-workers' perfumes and colognes. *Id*. at ¶ 19.

In or around June 2010, Cusack, the Jail's dentist, started to use natural dental products with strong odors, to leave open bottles of bleach in his office, and to spray the medical office with fragrance. *Id*. at ¶ 20. Cusack left open the door to the medical office, which allowed the odors and fragrances to permeate the hallways and nearby rooms. *Ibid*. Cusack also soaked paper towels in blue chemicals with a strong scent and placed them in the copy room. *Ibid*. On one occasion, Cusack hung gauze soaked in a fragrant solution from the dental office ventilators, and did not remove the gauze until the following day. *Id*. at ¶ 21.

Mitter continued to experience symptoms and illness from exposure to workplace scents, and continued to report her symptoms to the Sheriff's Office and to request accommodations. *Id*. at ¶ 22. At one point, Mitter saw her doctor and provided a doctor's note to the Sheriff's Office regarding her allergies. *Id*. at ¶ 23. The Sheriff's Office never investigated the dental office fragrances and did not otherwise accommodate Mitter's disability. *Id*. at ¶ 24. The Sheriff's Office did ask Cusack to keep the dental office door closed, but after complying for a week, he resumed leaving the door open. *Ibid*. Cusack also called Mitter "psycho" for having allergies, made animal noises at her in the hallway, and told her to see a psychiatrist. *Id*. at ¶ 25. In or around February 2011, Mitter reported continued allergy flare-ups to the Corrections Bureau

Health Care Administrator, who told her that she should look for another job due to her disability. *Id*. at ¶ 26.

On May 16, 2011, during her shift, Mitter administered an incorrect medication to an inmate. *Id*. at ¶¶ 27-29. Medication errors occurred regularly at the Jail due to its high inmate population, understaffing, and frequent cell reassignments. *Id*. at ¶ 30. Mitter complied with the Jail's Medication Error Program by reporting the error to the Jail doctor and completing an incident report. *Id*. at ¶ 31. According to the Jail's Special Health Care Issues & Programs, medications errors are non-punitive and do not result in termination. *Ibid*. On June 14, 2011, following her return from a pre-scheduled vacation, Mitter was terminated by the Sheriff's Office Human Resources Representative. *Id*. at ¶ 32. The grounds provided for the termination were Mitter's medication error, her alleged profanity upon realizing her error, and her alleged refusal to care for an inmate. *Id*. at ¶ 33.

Following her termination, Mitter filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination on the basis of her age, sex, national origin, and physical disability. Doc. 19 at 1. The EEOC issued a right-to-sue notice on October 31, 2012. Doc. 17 at ¶ 36; Doc. 19 at 13. Mitter received the notice on November 5, 2012, and filed this suit on February 1, 2013. Doc. 1; Doc. 17 at ¶¶ 36-37.

## Discussion

Defendants' motion to dismiss asserts five arguments, which are considered in turn.

### I. Whether DuPage County Is a Proper Defendant

The amended complaint alleges that Mitter "was at all relevant times an employee of the County of DuPage and DuPage County's Sheriff Department." Doc. 17 at ¶ 3. It further alleges that "DuPage County was Plaintiff's employer and issued Plaintiff her W-2 Wage and Tax

4

Statements." *Id*. at ¶ 3 n.1. Mitter's 2009 W-2 Wage and Tax Statement, which is attached to the amended complaint, names "DuPage County" as her employer. Doc. 17-1.

Defendants contend that DuPage County is not a proper defendant because it does not employ DuPage County Jail staff and "has no control over the Sheriff in the operation of the DuPage County Jail." Doc. 19 at 4. Defendants are correct. Settled precedent holds that an Illinois county is separate from the sheriff's office in that county, *see Thompson v. Duke*, 882 F.2d 1180, 1187 (7th Cir. 1989) ("The Cook County Jail, and the Cook County Department of Corrections, are solely under the supervision and control of the Sheriff of Cook County. The Sheriff is an independently-elected constitutional officer who answers only to the electorate, not to the Cook County Board of Commissioners.") (internal citations omitted), and therefore that a county is not liable for alleged misconduct by sheriff's office employees, *see Carver v. Sheriff of LaSalle Cnty.*, 243 F.3d 379, 382 (7th Cir. 2001) (holding that the LaSalle County Sheriff's Office and LaSalle County are "separate entities, and thus separate 'employers' for purposes of Title VII"); *Franklin*, 150 F.3d at 686 (under Illinois law, "sheriffs are agents of the county, but they are separate from the county boards to such a degree that the county boards cannot be held liable for their actions under *respondeat superior*"); *Ryan v. Cnty. of DuPage*, 45 F.3d 1090, 1092 (7th Cir. 1995) ("It is plain that the county was properly dismissed; Illinois sheriffs are independently elected officials not subject to the control of the county."); *Lakics v. Cnty. of DuPage*, 2012 WL 1044687, at *3 (N.D. Ill. Mar. 28, 2012) (dismissing all claims against DuPage County in a suit filed by an employee of the DuPage County Sheriff's Office); *French-Fuentes v. Lake Cnty.*, 2000 WL 1760970, at *2 (N.D. Ill. Nov. 30, 2000) ("Plaintiff named the County as a party to this litigation based upon the County and the Sheriff's joint-employment of her. This argument is untenable. The County Jail Act … grants control of the internal

5

operations of the Sheriff office to the Sheriff."). Accordingly, because Mitter worked at the Jail, her employer was the Sheriff's Office, which means that the County, despite having paid her salary, is not subject to liability for the alleged misconduct of the Sheriff's Office and its employees. *See Carver*, 243 F.3d at 382 ("[T]he source of funds need not coincide with the identity of the employer. Congress enacts budgets for the Bureau of Prisons and the Marshal Service (the federal bodies closest to the functions of a sheriff in Illinois), just as a county controls a sheriff's budget, but financial control does not make Congress the 'employer' of a prison guard or a marshal for purposes of Title VII."); *Franklin*, 150 F.3d at 686; *Mihelic v. Will Cnty., Ill.*, 826 F. Supp. 2d 1104, 1117 (N.D. Ill. 2011) ("because sheriffs are not subject to a county's control, liability cannot be imputed to the County based on the Will County Sheriff's actions"); *Rizzo v. Cnty. of DuPage*, 2006 WL 539346, at *2 (N.D. Ill. Mar. 1, 2006) ("The Seventh Circuit has made it clear that … a county cannot be held liable for actions by county sheriffs.").

DuPage County nonetheless will remain a party defendant. The Supreme Court of Illinois has held that "under Illinois law, … the county … is required to pay a judgment entered against a sheriff's office in an official capacity." *Carver v. Sheriff of LaSalle Cnty.*, 787 N.E.2d 127, 141 (Ill. 2003). Based on that holding, the Seventh Circuit ruled: "[A] county in Illinois is a necessary party in any suit seeking damages from an independently elected county officer (sheriff, assessor, clerk of court, and so on) in an official capacity. See Fed. R. Civ. P. 17, 19. Because state law requires the county to pay, federal law deems it an indispensable party to the litigation." *Carver v. Sheriff of LaSalle Cnty.*, 324 F.3d 947, 948 (7th Cir. 2003); *see also Nat'l Cas. Co. v. McFatridge*, 604 F.3d 335, 345 (7th Cir. 2010) (same); *Askew v. Sheriff of Cook Cnty.*, 568 F.3d 632, 636 (7th Cir. 2009) (same); *Lakics*, 2012 WL 1044687, at *3 ("The claims

against the County of DuPage survive only with respect to the County's state law obligation to indemnify the Sheriff should judgment be entered against him."); *Mihelic*, 826 F. Supp. 2d at 1117 ("the County is a necessary party to the litigation because Illinois state law requires the County pay damages in suits against a sheriff's department"). It follows that DuPage County will remain a defendant solely in its capacity as indemnitor of the Sheriff's Office and Zaruba.

## II. Whether the Sheriff's Office Is a Proper Defendant

Defendants contend that the Sheriff's Office "is not a sueable [sic] entity under Illinois law," Doc. 19 at 7. Settled precedent—from a case involving the Sheriff of DuPage County and litigated by the Office of the DuPage County State's Attorney, defense counsel in this case— says otherwise:

> The federal courts look to state law to determine if a defendant is amenable to suit. To be sued in Illinois, a defendant must have a legal existence, either natural or artificial. According to Illinois law, the Sheriff is an independently-elected constitutional officer. Ill. Const. Art. VII, § 4(c). Within the sheriff's prescribed range of activity, he and not some legislative-type body is at the apex of the governmental pyramid. Therefore, the Sheriff's office has a legal existence separate from the county and the State, and is thus a suable entity.

*DeGenova v. Sheriff of DuPage Cnty.*, 209 F.3d 973, 976 n.2 (7th Cir. 2000) (some internal citations and quotation marks omitted); *see also Ruffino v. Sheahan*, 218 F.3d 697, 700 (7th Cir. 2000) ("[i]n Illinois, the office of the Sheriff as an institutional matter is also ordinarily a suable entity"); *Franklin*, 150 F.3d at 685; *Posey v. Pruger*, 762 F. Supp. 2d 1086, 1090 n.2 (N.D. Ill. 2011) ("Because sheriffs serve as independently elected constitutional officers, their office has a legal identity separate from the county government and is therefore suable."). Accordingly, the Sheriff's Office is a suable entity and a proper defendant.

**III.    Whether the Statute of Limitations Bars the Federal Claims Against the Sheriff's Office**

Defendants next argue that Mitter's federal claims against the Sheriff's Office are time-barred under 42 U.S.C. § 2000e-5(f)(1), which requires that a plaintiff file a Title VII, ADA, or ADEA suit within ninety days of receiving a right-to-sue notice from the EEOC. *See Lee v. Cook Cnty.*, 635 F.3d 969, 971 (7th Cir. 2011) (Title VII); *Grzanecki v. Bravo Cucina Italiana*, 408 F. App'x 993, 994 (7th Cir. 2011) (ADEA); *Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 600 (7th Cir. 2009) (ADA); *Houston v. Sidley & Austin*, 185 F.3d 837, 838-39 (7th Cir. 1999) (all three). The EEOC issued Mitter a right-to-sue notice on October 31, 2012. Doc. 17 at ¶ 36; Doc. 19 at 13. Mitter received the notice on November 5, 2012, and filed this suit on February 1, 2013, within the ninety-day limitations period. Doc. 1; Doc. 17 at ¶¶ 36-37. The original complaint named only DuPage County and Cusack as defendants. Doc. 1 at 1. The Sheriff's Office was not named as a defendant until Mitter filed her amended complaint on April 29, 2013, well after the limitations period had expired. Doc. 17.

Although the Sheriff's Office was not named as a defendant within the limitations period, Mitter's claims against the Sheriff's Office are timely because they relate back to the filing of the original complaint. Rule 15(c)(1) provides that amended pleadings may "relate back" to the date the original pleading was filed where:

> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
>    (i) received such notice of the action that it will not be prejudiced in defending on the merits; and

      (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1). As the Seventh Circuit has explained, Rule 15(c)(1)(C) "provides for relation back … as a means for correcting the mistakes of plaintiffs suing official bodies in determining which party is the proper defendant." *King v. One Unknown Fed. Corr. Officer*, 201 F.3d 910, 914 (7th Cir. 2000) (internal quotation marks omitted). "[T]he Rule's language … *expressly* contemplates the prospect of the retrospective application of an amended complaint to a defendant who was *not* named originally, but who was added only later, when plaintiff or plaintiff's attorney realized that the defendant should have been named at the outset." *Woods v. Ind. Univ.-Purdue Univ. at Indianapolis*, 996 F.2d 880, 888 (7th Cir. 1993).

    In *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 130 S. Ct. 2485 (2010), the Supreme Court held that "relation back under Rule 15(c)(1)(C) depends on what the party to be added knew or should have known, not on the amending party's knowledge or its timeliness in seeking to amend the pleading." 130 S. Ct. at 2490. In light of *Krupski*, "[t]he only two inquiries that the district court is now permitted to make in deciding whether an amended complaint relates back to the date of the original one are, first, whether the defendant who is sought to be added by the amendment knew or should have known that the plaintiff, had it not been for a mistake, would have sued him instead [of] or in addition to suing the named defendant; and second, whether, even if so, the delay in the plaintiff's discovering his mistake impaired the new defendant's ability to defend himself." *Joseph v. Elan Motorsports Techs. Racing Corp.*, 638 F.3d 555, 559-60 (7th Cir. 2011).

    As Mitter correctly notes, the Sheriff's Office had notice of this suit because it was the subject of her EEOC complaint and subsequent Illinois Department of Human Rights

9

investigation, and because DuPage County and the Sheriff's Office are represented by the same counsel, the Office of the DuPage County State's Attorney. Doc. 19 at 13; Doc. 30 at 6. The Sheriff's Office therefore knew or should have been aware that its omission from the original complaint was inadvertent. *See Woods*, 996 F.2d at 887-99; *cf. Donald v. Cook Cnty. Sheriff's Dep't*, 95 F.3d 548, 561 (7th Cir. 1996). Defendants also fail to say how the Sheriff's Office was prejudiced by its omission from the original complaint. It follows that the amended complaint's claims against the Sheriff's Office relate back to the filing of the original complaint, making those claims timely. *See Hill v. Shelander*, 924 F.2d 1370, 1374-77 (7th Cir. 1991) (allowing relation back under Rule 15(c) where the complaint was amended from an official capacity suit against a prison guard to an individual capacity suit, reasoning that "[t]he nature of [the plaintiff's] claim did not change [with the amendment]; both the factual circumstances and legal gravamen of his complaint remained the same," and the defendant suffered no prejudice by the amendment); *see also Donald*, 95 F.3d at 561 (holding that the plaintiff "fell prey to the legal mistake of naming the Sheriff's Department [as a defendant]" instead of the individual officers, and remanding for a determination of whether relation back should be allowed); *Woods*, 996 F.2d at 886-87 (holding that the plaintiff's naming the university instead of its individual employees as a defendant constituted a "mistake" within the meaning of Rule 15(c), and remanding for determination of whether the individual employees would be prejudiced by relation back).

## IV. Whether Mitter May Seek Punitive Damages

Defendants argue that Mitter's request for punitive damages should be stricken. Doc. 19 at 9-10. The only authorities cited by Defendants are 42 U.S.C. § 1981a(b)(1), which states that "a complaining party may recover punitive damages under this section against a respondent

(other than a government, government agency or political subdivision)," and *Passananti v. Cook County*, 689 F.3d 655, 677 (7th Cir. 2012), and *Baker v. Runyon*, 114 F.3d 668, 671 (7th Cir. 1997), which hold that government agencies are exempt from punitive damages under Title VII. Mitter agrees that her request for punitive damages on the federal claims should be stricken, but argues that punitive damages are proper on the state law claims. Doc. 30 at 10-11. By failing to cite any authority regarding the availability of punitive damages on the state law claims, Defendants have forfeited for purposes of this motion any argument they might have had to strike the punitive damage request on the state law claims. *See Judge v. Quinn,* 612 F.3d 537, 557 (7th Cir. 2010) ("We have made clear in the past that it is not the obligation of this court to research and construct legal arguments open to parties, especially when they are represented by counsel, and we have warned that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.") (internal quotation marks and alterations omitted). Accordingly, Mitter's request for punitive damages on the federal claims is stricken, while her request on the state law claims may proceed.

**V.     Whether Jurisdiction Should Be Retained Over the State Law Claims**

Citing 28 U.S.C. § 1367(c)(3), Defendants argue that "if all federal law claims drop out before trial, the district court may dismiss the state law claims." Doc. 32 at 8. Because Mitter's federal claims survive dismissal, and because the state law claims "form part of the same case or controversy under Article III" as the federal claims, 28 U.S.C. § 1367(a), the court has and will retain supplemental jurisdiction over the state law claims.

**Conclusion**

For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part. The claims against DuPage County are dismissed with prejudice, as the flaw in Mitter's

claim against the County could not be cured by repleading; however, the County will remain a defendant solely as an indemnitor. Mitter's requests for punitive damages on the federal claims are stricken. The Sheriff's Office, Zaruba, and Cusack shall answer the surviving portions of the amended complaint by November 21, 2013.

November 7, 2013

_____
United States District Judge